Allen, J.
delivered the opinion of the Court.
The Court is of opinion that the mortgage deed to William E. Haskell, of the 9th February 1837; the deed of trust to Henry Massie, for the benefit of John Cochran, of the 11th March 1842; the deed of trust to James L. Woodville, for the benefit of the Bank of Virginia, of the 16th March 1842; the deed of trust to Henry Massie, for the benefit of William B. Phillips, of the 16th March 1842; the deed of trust to H. Massie, for the benefit of James L. Woodville, of the 4th of April 1842; the deed of trust to H. Massie, for the benefit of Andrew Allen and others, of the 5th of April 1842 ; and the deed of trust to H. Massie, for the benefit of James L. Woodville, of the 29th of April 1842, are valid and binding incumbrances on the property conveyed by and embraced in said deeds.
The Court is further of opinion, that as Thomas P. Lewis, by the articles of agreement between him and John B. Lewis, of the date of the 25th September 1834, was not bound to convey the lands thereby contracted to be sold to John B. Lewis, until the last instalment of the purchase money was paid, and as he *164 still retains the legal title as a security for the purchase money, he stands on higher ground than a vendor who, having parted with the legal title, is seeking the aid of a Court of equity to set up and give effect to the imP^ec^ hen for the purchase money. Holding the legal title, the vendor is not claiming an equity ; and he cannot be required to surrender that legal title until the purchase money is paid according to the stipulations of the contract: and the doctrine of the waiver of the implied equitable lien of the vendor who has parted with the legal title, when a different security has been taken for the purchase money, does not apply to such a case. The Court is therefore of opinion that the lien for the whole of the unpaid purchase money due to Thomas P. Lewis and his assignees is, so far as regards the property sold by him, paramount to all the other incumbrances, and must be first satisfied out of the proceeds arising from the sale thereof. And this being so, it is unnecessary to express any opinion as to the deed of trust to H. Massie, for the benefit of Thomas P. Lewis, of the 16th March 1842. For if valid, the Court in marshal-ling the incumbrances, would require him to look to his first and paramount lien, so as to leave any other fund embraced in his said deed of trust to be applied to subsequent incumbrances; and as it is manifest the property sold will raise a sum more than sufficient to pay off the purchase money, the said deed of trust, whether valid or invalid, can have no effect upon the rights of the parties.
A majority of the Court is further of opinion, that as the said John H. Peyton has not appealed from said decree, and the decision that the deed of trust in his favour to Henry Massie, of the 1st May 1842, is null and void, not being prejudicial to the rights of any of the other parties before this Court, or complained of by them as erroneous, the correctness of the decree in holding said deed null and void cannot be enquired into upon the _ present appeals.
*165 The Court is further of opinion, that the deed of the 11th January 1839, referred to in the answer of John B. Lewis, is void as against the creditors of said John B. Lewis, because the same was not recorded according to the laws of Virginia; and also because the same was a voluntary post-nuptial settlement, made by an embarrassed man, and which, upon its face, attempts to secure the benefit of the property settled, for himself during life, and retains the control over the same in his own hands. By the sale of the patrimonial estate of the said Caroline S. his wife, and the payment of the purchase money to him, his marital rights had attached thereon, and he could not by a voluntary deed made in fraud of the rights of his creditors withdraw the same from their reach.
And the Court is further of opinion, that as said John B. Lewis was in possession of said slaves in said deed mentioned, the unrecorded and fraudulent deed of the 11th January 1839, could not intercept the marital rights of the husband, so as to exempt the same from the claims of his creditors.
And the Court is further of opinion, that the deeds of mortgage by John B. Lewis to William L. Lewis of the 24th February 1842, were fraudulent and void as against the creditors of said John B. Lewis, so far as regards the alleged debt of 7000 dollars, described as being due to said William L. Lewis as trustee of the wife of said John B. Lewis : The said debt being for the price of the maiden lands of said Caroline S. the wife of said John B. received by him and attempted to be settled and secured for the benefit of said Lewis and family by the deed of the 11th of January 1839.
And the Court is further of opinion, that although the debt of 5200 dollars attempted to be secured by said mortgages of the 24th February 1842, was justly due, yet as the mortgagee accepted said mortgages with a knowledge of the fact that said settlement of the *166 TOOO dollars was a voluntary post-nuptial settlement, reserving the benefit and control of the property to the use of the grantor for life, and as this fact rendered the same fraudulent and void as against creditors so far as resPects the 7000 dollars, the same must be regarded as null and void as it respects the debt due to the mortgagee. The Court is therefore of opinion, that said mortgages of the 24th February 1842, upon the real and personal estate therein described to said William L. Lewis, as mortgagee, to secure the debts therein set forth, are null and void, as against the subsequent incumbrancers and the creditors of said John B. Lewis.
And without deciding the question whether a relinquishment of a contingent right of dower, where there is no complete alienation of the estate by the husband, but a mere incumbrance given for the security of a debt, constitutes a sufficient consideration for a settlement on the wife, as in such case the husband by discharging the debt and procuring a release of the incumbrance, would be reinvested with his whole estate, in which the wife would have a claim of dower; the Court is further of opinion, that there is no sufficient evidence of any contract or agreement between said John B. Lewis and his wife, to make upon her a settlement of the slaves named in the deeds of trust to Henry Massie and William L. Lewis, for the benefit of C. S. Lewis, wife of J. B. Lewis, the first of said deeds dated on the 5th April 1842, and the second on the 18th August 1842, in consideration of her release of her contingent dower interest in the estate of her husband. The loose conversations of the parties as proven, furnishes no evidence of such a contract; and though the wife, when she made such relinquishment as set forth in the deeds referred to, may have entertained the expectation that a settlement would be made, such hope and expectation cannot detract from the effect of her solemn relinquishment, or entitle her against creditors *167 or incumbrancers, without notice of her declarations at the time of making such relinquishment, to any relief against the effect thereof. The relinquishment as to them is to be taken according to its legal effect, as a voluntary act of the wife. The Court is therefore opinion, that the deeds of trust to Henry Massie and William L. Lewis, dated the 5th April 1842, and the 18th August 1842, for the benefit of said C. S. Lewis, are null and void as against the creditors of the husband ; and cannot be regarded as valid to the extent of the value of her contingent right of dower.
The Court is further of opinion, that as the various incumbrances herein declared to be valid, were taken upon the property conveyed thereby respectively, and as there is no evidence that any of the subsequent incumbrancers took by express agreement subject to the prior incumbrances, the proceeds arising from the sale of the property are to be applied to the payment of the valid incumbrances according to their several priorities. The judgment creditors have no right to be substituted to the position occupied by any of the incumbrances declared to be null and void: The various incumbrancers not having contracted with respect to the equity of redemption alone, have a right to charge the whole subject not covered by previous valid incumbrances. Nor is the right of the general creditors secured by the deed to H. Massie, of the 5th April 1842, to come in according to the order of their incumbrance, impaired in consequence of the grantor having excepted from his warranty the claims of such persons as claimed under deeds of trust of record: Such exception being merely personal to the grantor and no evidence of any agreement recognizing the validity of all previous incumbrances.
The Court is further of opinion, that the sequestration made at the instance of the judgment creditors, did not change the rights of the parties : and as the incum *168 brancers by mortgage or deed of trust, were arrested by such sequestration and suit from proceeding to subject said property to sale, they are as against the judgment creditors, entitled to the rents and profits of the property from the time they could have proceeded under their incumbrances. The rents and profits accruing before , . . . . that time were interests remaining in the grantor, to which the judgment creditors in virtue of their judgments, executions and the release of the debtor under the insolvent act, are entitled.
The Court is further of opinion, that the question as to the claim for the value of the contingent right of dower raised by the exception of the Bank of Virginia, can only become material in the event of the real estate not producing a sum sufficient to pay Thomas P. Lewis’s lien for the purchase money, and the mortgage in favour of Haskell. In that event, and as Haskell’s mortgage is subject to the contingent right of dower, there being no valid relinquishment of dower in the deed to him, the Bank of Virginia and the subsequent incumbrancers would be entitled as against Haskell to the contingent value of the dower interest first relinquished by the deed for the benefit of the bank. But the Court perceiving that the fund will be certainly ample to pay oif the two first incumbrances, there is no necessity to make any enquiry as to the value of such contingent claim of dower.
The Court is further of opinion, that in conformity with the principles aforesaid, the proceeds arising and to arise from the sale of the property in the proceedings mentioned, and the interest, rents, hires and profits thereof, should be applied as follows:
1. Out of the proceeds of the sales of the perishable property the debt secured by the deed in favour of John Cochran should be first paid.
2. The residue of the proceeds of the perishable property other than the furniture rented with the springs, *169 after the satisfaction of the Cochran debt, should be applied to the judgments of Caperton and Thomas Henning pro rata.
3. The proceeds arising from the sales of the slaves and their increase, together with the hires which have accrued or shall accrue, should be applied to the judgments of Caperton and Henning as aforesaid.
4 The rents arising from the springs and other property up to the 20th March 1844, to be applied to the judgments of Caperton and Henning as aforesaid, subject however to a deduction therefrom of a sum sufficient to pay the debts of Samuel Price and Joseph Damron, creditors secured by the deed to Henry Massie for Andrew Allen and others, of the 5th April 1842; the said Price and Damron being authorized to enforce said deed for their benefit on the 5th April 1843.
5. That an account should be taken to ascertain how much of the rents of real estate and furniture should be apportioned after the 20th March 1844, to each of these subjects, and the rents so ascertained and allowed for the use of the furniture after the 20th March 1844, and also the proceeds arising from the sales of the furniture to be applied to the payment of the debt secured by the deed of trust to Henry Massie to secure James L. Woodville, of the 29th April 1842, and should there be any residue remaining of such rents and proceeds arising from the sale of the furniture, after satisfying the debt secured by said last mentioned deed, such residue to be paid over to the judgment creditors, Caper-ton and Henning, as aforesaid.
6. The rents accruing from the realty to be ascertained as aforesaid, after the 20th of March 1844, to be applied to the debt due to the Bank of Virginia secured by the deed to J. L. Woodville, of the 16th of March 1842.
7. The proceeds arising from the sale of so much of the real estate as was purchased from Thomas P. Lewis *170 to be applied first to the payment of the purchase money payable to the said Thomas P. Lewis and his assignees. And in applying the proceeds aforesaid to the payment of the purchase money, the proceeds arising from the sale of said Thomas P. Lewis’s interest in the real estate, other than the tract of 159 acres, known by the name of the Sweet springs, embraced in the mortgage to William B. Haskell of the 9th February 1837, to be first appropriated for that purpose; and if any thing remains unpaid, the balance so remaining to be satisfied out of the proceeds arising from the sale of the moiety of said tract of 159 acres, sold by Thomas to John B. Lewis; the Court being of opinion that as Haskell’s lien extends to but part of the subject, he has a right to require the application of the proceeds in the manner aforesaid, so as to enlarge the fund out of which he alone can look for satisfaction.
8. After the payment of the purchase money the residue of the fund arising from the sale of the entire tract of 159 acres, known by the name of the Sweet springs, to be applied to the payment of the debt secured by the mortgage to Haskell.
9. After the satisfaction of the purchase money and the Haskell debt, the residue of the fund arising from the sale of the lands aforesaid, and all the real estate described in the deed of John B. Lewis to James L. Woodville for the Bank of Virginia, of the 16th March 1842, to be applied to the payment of the balance of the debt due to said bank, after crediting the amount applied thereto arising from the rents as aforesaid, and the debt of William B. Phillips secured by the deed to H. Massie for the benefit of Phillips of the 16th March 1842; and should the fund be insufficient to discharge both debts the proceeds to be ratably divided between the debt of Phillips and the balance due to the bank after deducting the credit for rents.
*171 10. The residue of the proceeds arising from the sale of said real estate, to be applied next after the debts due the Bank of Virginia and Phillips are satisfied, to the satisfaction of the debt secured by the deed to H. Massie for J. L. Woodville, of the 4th April 1842, or the balance unpaid after crediting the same with the rents and proceeds of the sale of the furniture as aforesaid.
11. The general creditors secured by the deed to H. Massie of the 5th April 1842, except the said Price and Damron who are to be paid out of the rents as aforesaid, will be next entitled to come in, the fund to be distributed pro rata among them, if insufficient to pay all the debts ; and if any of such debts have been discharged by any security, he is to be entitled to stand in the shoes of the creditor paid.
12. Next the judgment creditors Caperton and Henning will be entitled to payment of any balance due on their judgments, after crediting the same with the proceeds arising from the sales of negroes, hires, personal property and rents as' aforesaid.
13. And the residue, if any remain, after satisfying all the other creditors, to be applied to the debt due William L. Lewis in his own right, and the debt due to him as trustee of C. S. Lewis, secured by his mortgages, which though void as against subsequent incumbrancers of the whole subject, and creditors, is good as between the parties.
14. And lastly, if any surplus should remain after the payment of all of said incumbrances and judgments, the same or so much thereof as may be equal in value to the price of the slaves and their increase, to be settled and secured upon C. S. Lewis, the wife of John B. Lewis, to be held according to the terms and stipulations of the deed of the 5th of April 1842, as explained by the deed of the 18th August 1842.
*172 But before any distribution is made, the sums hereto-f°re allowed under interlocutory orders, are to be deducted, and all the costs incurred in the prosecution of these suits in said Circuit court, are to be paid out of the fun(3s arising and to arise from sales and rent of real estate, the sales and rent of perishable property, and sales and hires of negroes; the three funds to contribute ratably to the payment of the costs in the Circuit court.
It is therefore adjudged and ordered that said decree, so far as it conflicts with the principles herein above declared, is erroneous, and that the same be reversed and annulled; and that the appellees in the case of Lewis and wife and others against Caperton and others, as the parties substantially prevailing, recover of the appellants their costs here expended, and that the appellants in the other cases recover of the appellees their costs here expended.
And this cause is remanded with instructions, to direct an account to ascertain the proportions of rent to be credited to the real and personal fund as aforesaid ; and also to ascertain the whole amount of funds in hand and arising from the sales to be directed, which will remain for distribution after deducting the sums heretofore allowed by the Court, and all costs; and the amount of the several debts towards which the same is to be applied ; that a proper conveyance be executed by the said Thomas P. Lewis, or a commissioner, to the said John B., and acknowledged and filed, so that when a sale is made and confirmed, the same may be withdrawn and recorded; and that in the meantime commissioners to be appointed by the Court be decreed to make sale of the real property embraced in the several mortgages and deeds of trust herein declared to be valid, and after allowing a proper time to redeem the property by payment of the debts charged thereon, and also to make sale of the perishable property unsold, the furni *173 ture, and the slaves named in the deeds of January 11th, 1839, and of April 5th, 1842, together with their increase; the slaves and personal property to be sold for cash; and the real estate to be sold in the following order: first, the tract of 159 acres known as the Sweet springs tract; second, the residue of the tracts of which said Thomas P. and John B. Lewis were joint owners, dividing such residue in such mode as will be best calculated to enhance the price; third, any other lands of John B. Lewis embraced in the deed of trust to secure the Bank of Virginia; the sales of the real estate to be on a credit of 1, 2, 3 and 4 years, the purchasers giving bond and good security for the amount of the purchase money; and a lien being retained on the lands sold for the security thereof, and that said commissioner report, &e.